**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 25-14261-CIV-CANNON/Maynard**

**THE TOX FRANCHISING GROUP,**
**LLC** and **THE TOX IP, LLC**,

      Plaintiff, Counter Defendant,

v.

**DARBY HOGGATT**,
**JESSICA HOGGATT**, and
**GENX HOLDINGS, LLC**,

      Defendants, Counter Plaintiffs,

v.

**FRANCHISE FASTLANE, LLC**,

      Third-Party Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND**
**SETTING ANSWER DEADLINE**

**THIS CAUSE** comes before the Court upon the Motion to Dismiss the Amended

Counterclaim with Prejudice (the "Motion") [ECF No. 78], filed by Counter-Defendant The Tox

Franchising Group, LLC and The Tox IP, LLC (collectively, "The Tox"), and Third-Party

Defendant Franchise Fastlane, LLC ("FFL"). The Amended Counterclaim [ECF No. 75] is

brought by Darby Hoggatt, Jessica Hoggatt (collectively, the "Hoggatts"), and GenX Holdings,

LLC ("GenX") (collectively, "Counter-Plaintiffs"). The Court has reviewed the Motion, the

Response [ECF No. 87], the Reply [ECF No. 89], and the full record. The Court also heard

argument on the Motion during a Hearing on May 21, 2026 (the "Hearing") [ECF No. 101 (Minute Entry)].[1]

Upon full review, Counter-Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** [ECF No. 78]. The Court reasons as follows, including in this Order only what is necessary to decide the Motion and assuming the parties' familiarity with the general allegations and procedural history.

1. **Shotgun Pleading Challenge**. Counter-Defendants move to dismiss the Amended Counterclaim as a shotgun pleading, arguing that it (a) improperly commingles the actions and/or omissions of the Counter-Defendants without specifying which party is responsible for what and (b) asserts vague and conclusory allegations throughout [ECF No. 78 pp. 3–5]; *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (establishing shotgun pleading parameters in the Eleventh Circuit). Although aspects of the Amended Counterclaim do suffer at times from these deficiencies—and although the manner of pleading does impose upon Counter-Defendants (and the Court) the obligation to parse out the factual allegations applicable to each count—the Court ultimately declines to dismiss it as a shotgun pleading. Counter-Plaintiffs separate each cause of action into its own count (without broadly incorporating preceding counts as done in an earlier pleading) [ECF Nos. 73, 75]; Counter-Plaintiffs organize the factual narrative under descriptive headings; and Counter-Plaintiffs attribute (in the factual allegation section of the Amended Counterclaim) the alleged misrepresentations to identified speakers, with some dates and some supporting exhibits [ECF No. 75 ¶¶ 20–21, 38, 58]. All told, the Amended Counterclaim does enough to provide notice of the claims alleged to survive a dismissal challenge on shotgun pleading grounds

---

[1] The transcript of the Hearing is cited in this Order using the following convention: Tr. __.

alone. To the extent the Motion contends the fraud-based counts impermissibly commingle The Tox and FFL, the Court addresses that concern below by evaluating the allegedly fraudulent statements under the pleading requirements of Rule 9(b).

2. **Federal Rule of Civil Procedure 9(b) Challenge**. Counter-Defendants move to dismiss the following counts for insufficient pleading under Federal Rule of Civil Procedure 9(b): Count I (fraud – against The Tox and FFL); Count II (aiding and abetting fraud – against FFL only); Count III (violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213 – against The Tox and FFL); Count V (negligent misrepresentation – against The Tox and FFL); Count VII (civil conspiracy – against The Tox and FFL); and Count VIII (violation of the Florida Franchise Act, Fla. Stat. § 817.416 – against The Tox only) [ECF No. 78 pp. 6–12, 20–21, 23, 25; ECF No. 89 pp. 5–6, 8–9]. The parties agree that Rule 9(b) applies to Counts I and II [Tr. 34, 51; *see* ECF No. 87 pp. 6–8, 15], but Counter-Plaintiffs reject application of Rule 9(b) to the remaining claims and insist that the Amended Counterclaim satisfies Rule 9(b) in any event as to all contested counts [ECF No. 87 pp. 6–9; *see* Tr. 38]. Upon review of this issue, the Court determines as follows:

   a. As a threshold matter, Rule 9(b)'s heightened pleading standard applies to Counts I, II, III, V, VII, and VIII. This is because each of those counts alleges a unified course of fraudulent conduct and relies on that course of conduct—the same alleged misrepresentations underlying the fraud count—as the basis of the claim. *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (finding a claim "sound[ed] in fraud" within the meaning of Rule 9(b), where it was based on allegations that a plaintiff relied on intentional misrepresentations to his own detriment).

3

b. "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made[;] (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same[;] (3) the content of such statements and the manner in which they misled the plaintiff[;] and (4) what the defendants obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) (quotation omitted).

c. Counter-Plaintiffs appear, on the one hand, to acknowledge the demands of Rule 9(b), but then they turn around and say that every statement made by FFL as pled in the Amended Counterclaim should be deemed, for pleading purposes, to be a statement by The Tox because FFL acted as The Tox's agent [ECF No. 87 p. 6; Tr. 34].  Yet the Amended Counterclaim provides no factual content to support an agency theory,[2] and indeed, even Counter-Plaintiffs admit in the Amended Counterclaim that they lack information to plead an agency relationship between The Tox and FFL [ECF No. 75 ¶ 10 (alleging that, "[t]o the extent FFL acts as The Tox's agent (and the Hoggatts do not have enough information to make that determination at this time), the law is clear . . . his principal is liable for fraud perpetrated by the agent" (quotation omitted))]. Nor is it enough to respond, as Counter-Plaintiffs did at the hearing, that discovery might later support an agency relationship between The Tox and FFL [Tr. 37].  Bottom line, Rule 9(b) applies now, at the pleading stage, *see generally U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).  The Amended Counterclaim offers

---

[2] *See Vermeulen v. Worldwide Holidays, Inc.*, 922 So. 2d 271, 274 (Fla. Dist. Ct. App. 2006) ("The standard for determining whether an alleged agent is an independent contractor is the degree of control exercised by the employer or owner of the alleged agent." (quotation omitted)).

no non-conclusory fact to support an agency theory or to otherwise permit excusing the particularity requirements of Rule 9(b) with respect to alleged statements by The Tox.

d.  Having confirmed the requirements of Rule 9(b) as to each Defendant charged with fraudulent conduct and/or misrepresentations, the Court turns to evaluate the disputed counts under Rule 9(b) (Counts I, II, III, V, VII, VIII) and the alleged misrepresentations contained within those counts.  Having done so, the Court determines that Counter-Plaintiffs have satisfied Rule 9(b) only as to three statements by FFL and one statement by The Tox as alleged in the Amended Counterclaim.

e.  The FFL statements that are pleaded with sufficient particularity in the Amended Counterclaim are as follows: (i) the representation in the video that Ms. Sacco (FFL's Director of Franchise Development for The Tox) sent to Ms. Hoggatt on February 27, 2024, in which FFL represented that thirty franchise locations were open at that time, when in truth the FDDs disclosed only one standard franchised outlet [ECF No. 75 ¶¶ 21–24]; (ii) FFL's turnkey-marketing representations, including FFL CEO Carey Gille's promotional-video statement that "The Tox corporate team provides turnkey done-for-you, influencer and social media marketing with strong corporate experience and a dedicated social media manager," when, as alleged, The Tox never assigned a dedicated social media manager and never provided a turnkey program [ECF No. 75 ¶¶ 38–44]; and (iii) FFL's contemporaneous advertisement that a prospective franchisee would have validation calls with pre-existing franchisees to answer "any questions the candidates might have," when as alleged, there were virtually no pre-existing franchisees [ECF No. 75 ¶¶ 22–24, 27].

f.  The sole statement alleged with particularity as to The Tox is the statement by Ms. Yeager (The Tox's CEO and founder) during a "Confirmation Day" presentation on June 11, 2024, in New York City, in which Yeager stated that The Tox would handle all of the franchisee's marketing [ECF No. 75 ¶ 58].

g.  These statements—pled in paragraphs 21–24, 27, 38–44, 58, 62, 116–19 of the Amended Counterclaim—provide the who, what, when, and where required by Rule 9(b). *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025) ("We have held that Rule 9(b) requires the plaintiff to allege the who, what, when[,] where, and how of the fraudulent conduct" (quotation omitted)).  The Court therefore narrows its Rule 12(b)(6) analysis on Counts I, II, III, V, VII, and VIII to these statements alone, as discussed below.  **Those counts are otherwise dismissed/narrowed to the extent they rest on other alleged misrepresentations that fail to satisfy Rule 9(b)**.

3.  **Rule 12(b)(6) Challenge as to Count I (Fraud – Hoggatts against The Tox and FFL)**. Counter-Defendants move to dismiss Count I on two principal grounds: first, insufficiency of pleading under Rule 9(b), already addressed above; and second, that any misrepresentations that survive Rule 9(b) do not support a fraud claim because they are contradicted by the Franchise Disclosure Document ("FDD"), which explicitly (i) disclaims The Tox's responsibility to conduct advertising/marketing campaigns and (ii) represents the existence of *only one* franchise outlet [ECF No. 78 p. 6; ECF No. 78-1 p. 28].  The Court disagrees with Counter-Defendants on this issue because of two key pieces of language in the Franchise Agreement, the significance of which Counter-Defendants ignore in Reply [*see* ECF No. 89 pp. 8–9].  First, as Counter-Plaintiffs observe, the Franchise Agreement expressly authorizes a prospective franchisee to rely on statements made by "any franchisor, franchise seller or other

person acting on behalf of the Franchisor" [ECF No. 87 p. 14 (citing ECF No. 1-2 p. 70)]. And second, the Franchise Agreement explicitly states that such provision (regarding reliance) "supersedes any other term of any document executed in connection with the franchise" [ECF No. 87 p. 14 (citing ECF No. 1-2 p. 70)]. What these provisions appear to mean, accepted as true at this stage, is that Counter-Plaintiffs were free to rely on statements made by FFL or The Tox irrespective of whether such statements are at odds with portions of the FDD. Accordingly, **Counter-Defendants' Motion to Dismiss is denied as to Count I, which survives but only as to the four statements identified above**.

4. **Rule 12(b)(6) Challenge as to Count II (Aiding and Abetting Fraud – Hoggatts against FFL only)**. Counter-Defendants move to dismiss Count II on the grounds that it does not meet Rule 9(b)'s heightened pleading standard and fails to properly allege that FFL had knowledge of the fraud being committed by The Tox [ECF No. 78 pp. 8–9; ECF No. 89 pp. 4–5; Tr. 48–51]. Counter-Plaintiffs respond that FFL sold franchises on The Tox's behalf for commissions and made statements conflicting with the FDD, which they say gives rise to a strong inference of FFL's actual knowledge [ECF No. 87 pp. 15–17]. The Court disagrees. Stripped of conclusory labels, those allegations show, at most, that FFL should have known of the underlying fraud. They do not plausibly allege the actual knowledge required for aiding and abetting liability. *See Platinum Estates, Inc. v. TD Bank*, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) ("Conclusory statement[s] that a defendant actually knew [of fraudulent activity are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest[ ] that the defendant should have known that something was amiss." (quotation omitted)). Accordingly, **Count II is dismissed**.

5. **Rule 12(b)(6) Challenge as to Count III (FDUTPA – Hoggatts against The Tox and FFL)**.

Counter-Defendants move to dismiss Count III for failure to satisfy Rule 9(b) and for failure to plead actual damages [ECF No. 78 pp. 9–12; ECF No. 89 pp. 5–7]. The Rule 9(b) analysis is addressed below and is not repeated here. As to the issue of damages as pled, the Court ultimately denies the Motion and permits Count III to proceed as narrowed to the deceptive statements discussed above that satisfy Rule 9(b). It is true that the body of Count III itself contains only a general and conclusory statement about suffering actual damages [ECF No. 75 ¶ 130 ("As a direct and proximate cause of Counter-Defendants' actions, Individual Counter-Plaintiffs have been damaged and are entitled to all remedies and damages permitted under the FDUTPA including actual damages and attorneys' fees.")]. It is also true that a consumer pleading a consumer claim under FDUTPA must establish actual damages as an essential element of any such claim (along with an objectively deceptive act and causation). *See, e.g.*, *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400, 2024 WL 5058304, at \*12 (S.D. Fla. Dec. 9, 2024) ("A consumer claim for damages under FDUTPA has three elements: (1) an objectively deceptive act or unfair practice; (2) causation; and (3) actual damages. The FDUTPA entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." (citation and quotations omitted)). Nevertheless, construing all reasonable inferences in the Hoggatts' favor, there is sufficient (albeit limited) information in the Amended Counterclaim to trigger a plausible inference that they suffered actual damages by investing substantial sums in the franchise (over $500,000), earning just a modest sum over approximately two months of operation prior to termination (approximately $33,000), and then facing full termination of the franchise

agreement [ECF No. 75 ¶¶ 67, 101, 113].  Accordingly, **Count III may proceed at this stage**, although the Hoggatts will have to establish actual damages to prevail on this claim.

6. **Rule 12(b)(6) Challenge as to Count IV (Florida Breach of Contract – Hoggatts against The Tox**).  Counter-Defendants move to dismiss Count IV (breach of contract and, in the alternative, breach of the implied covenant of good faith and fair dealing), arguing that the cited provisions of the Franchise Agreement either do not impose any enforceable duty or are contradicted by the pleaded facts; that Section 17 of the Franchise Agreement expressly authorized termination; and that "Counter-Plaintiffs fail to identify the specific provision(s) of the Franchise Agreement that these 'breaches' are based upon" [ECF No. 78 pp. 13–20].

   a. Counter-Defendants are correct that the vast majority of the breach theories in paragraphs 133 and 136—premised on the alleged proprietary-system, trade-secret, turnkey-marketing, investment-cost, territorial-protection, technology-fee, training-and-assistance, advisory-council, product-requirements, advertising-materials, Brand-Fund, grand-opening-marketing, regional-cooperative, and social-media-influencer provisions and representations—are based on provisions in the Franchise Agreement that either impose no corresponding duty on The Tox, reserve discretion to The Tox, or impose only limited duties not plausibly alleged to have been breached [ECF No. 75 ¶¶ 133, 136; ECF No. 1-2 §§ 3.1, 6.5, 7.1, 7.4–7.6, 9.5, 10.5, 10.6, 10.8–10.9, 12.1.9, 13.1, 13.2.3, 13.2.4, 13.3.2, 13.3.4, 13.4, 14.1.1, 19.2; *see* Tr. 41].  To the extent Count IV rests on these unenforceable aspirational and purely discretionary standards, Count IV fails to state a claim for breach of contract or for breach of duty of good faith.

   b. But Count IV may proceed as narrowed to Section 13.5 and Section 7.3 of the Franchise Agreement, both of which create enforceable promises allegedly breached by The Tox

[ECF No. 75 ¶¶ 75, 89, 93; *see* ECF No. 1-2 §§ 7.3, 13.5].  In particular, Section 13.5 essentially forbade The Tox from collecting a social media management fee from the Hoggatts during the first two months of operation of the franchise, yet the Hoggatts allege that The Tox unlawfully made them pay that amount during the relevant period [ECF No. 75 ¶¶ 75, 102; ECF No. 1-2 § 13.5].  Likewise, Section 7.3 required The Tox to provide the Hoggatts with "opening assistance by a trained representative" within sixty days of the franchise opening, at "no charge," yet the Hoggatts allege that The Tox charged them for that opening assistance [ECF No. 1-2 § 7.3; ECF No. 75 ¶ 89].

c.  To the extent the Hoggatts base Count IV on an alternative theory that The Tox breached its duty of good faith and fair dealing through some impropriety related to termination of the Franchise Agreement [ECF No. 75 ¶¶ 102, 135], the Court will permit this claim to proceed past the motion to dismiss stage.  But the Hoggatts are warned that the implied covenant does not operate as an independent term of the parties' contract; it cannot override an express contractual provision; and most importantly, there can be no cause of action for a breach of the implied covenant "absent an allegation that an express term of the contract has been breached."  *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005).

7.  **Rule 12(b)(6) Challenge as to Count V (Negligent Misrepresentation – Hoggatts against The Tox and FFL**).  Counter-Defendants move to dismiss the negligent misrepresentation claim in Count V (pled as an alternative to Count I) on two grounds: lack of particularity under Rule 9(b) and failure to properly allege justifiable reliance, an essential element of a claim for negligent misrepresentation [ECF No. 78 pp. 20–21].  *See, e.g.*, *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011) ("[A] claim for negligent

misrepresentation under Florida law requires a showing that the recipient of the information justifiably relied on the erroneous information."). The Rule 9(b) challenge is resolved by the analysis above: Count V may proceed only as to the statements identified in paragraph 2. The justifiable-reliance argument does not warrant dismissal at this stage, for two reasons. First, Counter-Defendants do nothing more than argue that "Counter-Plaintiffs improperly commingle all allegations and alleged misrepresentations amongst both Counter-Defendants (again), and fail to specify or plead any identifiable misrepresentations that they refer to" [ECF No. 78 p. 21]. This is conclusory and insufficient to cause dismissal. Second, and more substantively, the existence of justifiable reliance is ordinarily a question of fact not amenable to resolution on the pleadings. *See, e.g.*, *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 652 (Fla. Dist. Ct. App. 2006) ("The issue of whether the Romos' reliance on the representations allegedly made by Martinez was reasonable, is an issue of fact which may not be resolved at this stage of the proceedings."); *see also Wright-Long v. Wellington Manor*, 864 So. 2d 576, 577 (Fla. Dist. Ct. App. 2004) ("Because factual disputes will almost certainly arise concerning the question of whether appellant's reliance was reasonable and justified under the circumstances, any such claim for relief shall be presented to the lower tribunal for its consideration and disposition."). This conclusion is reinforced by the Franchise Agreement language referenced above, which allows the franchisee to rely on statements made by the franchisor, a franchise seller, or anyone acting on its behalf [ECF No. 1-2 p. 70; ECF No. 87 pp. 13–14]. Accordingly, **Count V may proceed for now (as an alternative theory) to the extent it is premised on the statements identified in paragraph 2 above**.

8. **Rule 12(b)(6) Challenge as to Count VI (Unjust Enrichment – Hoggatts against The Tox and FFL**). Counter-Defendants seek dismissal of the unjust enrichment theory in Count VI,

11

providing two reasons: first, Counter-Plaintiffs fail "to plead the various unknown and unidentified fees from each separate Counter-Defendant that it seeks to recoup," and second, there "is an express contract between The Tox and the Hoggatts" [ECF No. 78 p. 22]. Upon review, the Court agrees with Counter-Plaintiffs that this claim survives as an alternative theory in light of the parties' dispute over the enforceability of the Franchise Agreement [ECF No. 87 pp. 23–24]. *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316–17 (M.D. Fla. 2000); *see also* Fed. R. Civ. P. 8(d). FFL's argument that Count VI fails because Counter-Plaintiffs paid the franchise fees to The Tox rather than to FFL is not a reason to dismiss this claim at this stage. The Amended Counterclaim alleges that FFL was retained to sell The Tox franchises, earned a commission upon a franchisee's execution of an agreement and payment of the initial fee, directly participated in procuring Counter-Plaintiffs' purchase, and received a substantial portion of their $91,500 payment [ECF No. 75 ¶¶ 7, 17–18, 34, 59, 146–48]. Taken as true, these allegations plausibly trace a specific benefit from Counter-Plaintiffs through The Tox to FFL. *See Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*, 370 So. 3d 1010, 1017 (Fla. Dist. Ct. App. 2023) (noting that an unjust-enrichment claim is not precluded merely because the benefit passed through an intermediary before reaching the defendant). **Count VI may proceed as an alternative claim**.

9. **Rule 12(b)(6) Challenge as to Count VII (Civil Conspiracy to Commit Fraud – Hoggatts against The Tox and FFL**). Counter-Defendants move to dismiss the civil conspiracy claim in Count VII, again citing Rule 9(b). Counter-Defendants also maintain that the Amended Counterclaim lacks any facts plausibly establishing an essential element of a claim for civil conspiracy, specifically, an agreement to perform an unlawful act or a lawful act by unlawful means [ECF No. 78 pp. 23–25]. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9

(Fla. 2015) ("A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy."). Even construing the allegations in Counter-Plaintiffs' favor, the Court agrees with Counter-Defendants. Indeed, when pressed at the Hearing to identify any allegation that would "lead to a plausible inference that these two entities got together in a conspiratorial fashion to defraud prospective franchisees," all Counter-Plaintiffs could point to were the headings in the Amended Counterclaim [*see* Tr. 42–43]. The headings, which are conclusory and lack factual content, are insufficient on their face. Moreover, "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity." *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). Counter-Plaintiffs have not done so. **Count VII is dismissed**.

10. **Rule 12(b)(6) Challenge as to Count VIII (Violation of the Florida Franchise Act, Fla. Stat. § 817.416 – Hoggatts against The Tox)**. Count VIII alleges that The Tox violated the Florida Franchise Act, Fla. Stat. § 817.416, by intentionally misrepresenting the franchise's prospects or chances for success and the known total investment required to establish the franchise, and by failing to disclose efforts to sell or establish more franchises than the relevant market could reasonably sustain [ECF No. 75 ¶ 156]. As relevant here, Fla. Stat. § 817.416 makes those three categories of conduct unlawful when a person sells or establishes a franchise. Fla. Stat. § 817.416(2)(a)1–3.[3] Counter-Defendants move to dismiss this claim, arguing that

---

[3] Section 817.416(2)(a) makes it unlawful, "when selling or establishing a franchise or distributorship, for any person:

1. Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship;

the Hoggatts have not "pleaded any specific facts evidencing that The Tox intentionally misrepresented the prospects or chances of success of The Tox franchise, or that The Tox intentionally mispresented the known required total investment for their franchise" [ECF No. 78 p. 25]. Counter-Defendants are correct. With the agency theory rejected and the statements failing Rule 9(b) stripped away, all that remains as to The Tox is Ms. Yeager's Confirmation Day marketing statement [ECF No. 75 ¶ 58]. Yet that statement does not even fall among the allegations on which Counter-Plaintiffs rely in support of this claim [*see, e.g.*, ECF No. 87 pp. 25–26 (citing portions of the Amended Counterclaim other than paragraph 58)]. More importantly, that statement—that The Tox would handle all of the franchisee's marketing—does not fall within any of the categories of conduct covered by the Act. *See* Fla. Stat. § 817.416(2)(a). Accordingly, **Count VIII is dismissed**.

11. **Rule 12(b)(6) Challenge as to Count IX (Tortious Interference with a Contract or Business Relationship – GenX against The Tox)**. Count IX alleges that The Tox intentionally and unjustifiably interfered with GenX's Boulder lease by pretextually terminating the Hoggatts' Franchise Agreement, thereby causing GenX to purportedly breach the lease and suffer damages [ECF No. 75 ¶¶ 160–165].

  a. Counter-Defendants move to dismiss on two grounds: (i) the Amended Counterclaim does not plausibly allege that The Tox caused the landlord not to perform under the lease or that GenX suffered damages from any such failure to perform, and (ii) alternatively,

---

2. Intentionally to misrepresent, by failure to disclose or otherwise, the known required total investment for such franchise or distributorship; or
3. Intentionally to misrepresent or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain."

Fla. Stat. § 817.416(2)(a).

The Tox has a financial or supervisory interest in the lease agreement (i.e., is not a "stranger to [the] business relationship") and hence cannot be held liable for tortious interference under Florida law. *See Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. Dist. Ct. App. 2009) ("Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.").

b.  The elements of a claim for tortious interference with a contractual or business relationship are as follows: "(1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. Dist. Ct. App. 2015).

c.  Although paragraph 164 states that The Tox caused GenX to breach the lease, paragraph 162 alleges only that GenX "purportedly" violated the lease, and the Amended Counterclaim does not allege supporting facts identifying which lease obligation GenX or the landlord failed to perform, that the landlord declared GenX in default, or that the landlord asserted a claim against GenX [ECF No. 75 ¶¶ 114, 162–65]. Indeed, Counter-Plaintiffs' counsel acknowledged at the Hearing that the Amended Counterclaim does not allege that the landlord declared GenX in default or made any formal claim against GenX [Tr. 46–48]. Accordingly, the Amended Counterclaim leaves the Court with only a conclusory assertion that The Tox caused a breach of the Boulder lease and no well-

15

pled facts from which the Court can plausibly infer that an actionable interference occurred.  Accordingly, **Count IX is dismissed**.[4]

12. **Rule 12(b)(6) Challenge as to Count X (Indemnity – GenX against The Tox)**.  Count X seeks indemnity from The Tox for lease obligations and attorney's fees that GenX allegedly incurred because The Tox's purportedly wrongful termination of the Franchise Agreement exposed GenX to liability to its landlord [ECF No. 75 ¶¶ 167–170].  Counter-Defendants move to dismiss this claim, explaining that "GenX has failed to plead facts that The Tox is vicariously, constructively, derivatively, or technically liable for the amounts owed by GenX under its lease or the attorney's fees incurred to sustain an indemnity cause of action" [ECF No. 78 p. 30].  Counter-Defendants are correct.  GenX identifies no express indemnity provision; it has not pleaded that it is wholly without fault; and its claim depends on GenX's becoming liable to its landlord, which has not occurred [ECF No. 75 ¶¶ 167–170; *see* Tr. 47].  *See Access for the Disabled, Inc. v. Wiles Foods, Inc.*, No. 07-61500-CIV, 2008 WL 11333765, at *2 (S.D. Fla. June 19, 2008) ("Wiles' indemnity claim rests upon contingent future events, and is therefore premature for adjudication."); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A

---

[4] In light of this ruling, the Court need not reach Counter-Defendants' alternative assertion that dismissal is warranted due to The Tox's supervisory/financial interest in the franchised location [ECF No. 78 pp. 28–29; ECF No. 89 pp. 10–11].  Aside from The Tox's role in approving the lease initially and sending a trainer to the location, the Amended Counterclaim does not contain sufficient facts to exhibit a clear supervisory or financial interest in the lease agreement itself [ECF No. 75 ¶¶ 69, 89–90].  Moreover, even if The Tox could be sued under a tortious interference theory as a non-stranger to the contract, Counter-Plaintiffs have offered allegations that The Tox employed "improper means" in protecting their financial interests, including through misrepresentations [*see* ECF No. 87 pp. 27–28].  *See Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 895–96 (11th Cir. 2025) (discussing improper-means exception to "stranger" requirement under tortious interference).

claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quotation omitted)). **Count X is dismissed**.

13. One final point regarding the possibility for repleading and Counter-Defendants' request for dismissal with prejudice. The Court need not authorize yet another round of repleading Counter-Plaintiffs' Counterclaims. As the record shows, this is Counter-Plaintiffs' second attempt to plead these claims [ECF No. 42], even after Counter-Defendants previously moved to dismiss them arguing many of the same theories they present now [ECF No. 58]. More importantly, Counter-Plaintiffs have not filed a motion for leave to amend, despite Counter-Defendants' request for dismissal with prejudice [ECF No. 78 p. 30; ECF No. 89 p. 2; Tr. 4]. Beyond that, Counter-Plaintiffs did not even embed a request to amend in their Opposition, even assuming such a request would have been procedurally proper (it would not have been). *Pop*, 145 F.4th at 1298 ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). And finally, there is nothing in Counter-Plaintiffs' papers that identifies any specific material that Counter-Plaintiffs could add to a Second Amended Counterclaim at this time, if given a chance to replead. To the extent Counter-Plaintiffs hope that discovery will reveal more information about their claims, that speculative hope provides no basis to warrant yet another round of repleading in this case.

14. To summarize, Counter-Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, consistent with this Order [ECF No. 78].

   a. Count I (Fraud—Jessica and Darby Hoggatt against The Tox and FFL) may proceed as narrowed to the statements identified in paragraph 2. Count I is otherwise dismissed with prejudice.

CASE NO. 25-14261-CIV-CANNON/Maynard

b. Count II (Aiding and Abetting Fraud—Jessica and Darby Hoggatt against FFL) is dismissed with prejudice.

c. Count III (FDUTPA—Jessica and Darby Hoggatt against The Tox and FFL) may proceed as narrowed to the statements identified in paragraph 2. Count III is otherwise dismissed with prejudice.

d. Count IV (Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing—Jessica and Darby Hoggatt against The Tox) may proceed as narrowed in this Order. Count IV is otherwise dismissed with prejudice.

e. Count V (Negligent Misrepresentation—Jessica and Darby Hoggatt against The Tox and FFL) may proceed as narrowed to the statements identified in paragraph 2. Count V is otherwise dismissed with prejudice.

f. Count VI (Unjust Enrichment—Jessica and Darby Hoggatt against The Tox and FFL) may proceed as an alternative claim.

g. Count VII (Civil Conspiracy as to Fraud—Jessica and Darby Hoggatt against The Tox and FFL) is dismissed with prejudice.

h. Count VIII (Violation of the Florida Franchise Act—Jessica and Darby Hoggatt against The Tox) is dismissed with prejudice.

i. Count IX (Tortious Interference with Contract—GenX against The Tox) is dismissed with prejudice.

j. Count X (Indemnity—GenX against The Tox) is dismissed with prejudice.

15. On or before **August 5, 2026**, Counter-Defendants shall Answer the Amended Counterclaim as narrowed by this Order.

18

CASE NO. 25-14261-CIV-CANNON/Maynard

**ORDERED** in Chambers at Fort Pierce, Florida, this 20th day of July 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

19